# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 2:16-cr-00111-JAD-CWH |
| vs. | ) **REPORT & RECOMMENDATION** |
| CRAIG P. ORROCK, | ) |
| Defendant. | ) |

Presently before the court is Defendant Craig P. Orrock's Motion to Suppress Illegally Obtained Evidence (ECF Nos. 23, 43), filed May 26, 2017, the government's response (ECF No. 30), filed June 9, 2017, and Orrock's reply (ECF No. 42), filed June 16, 2017.[1]

On April 12, 2016, Orrock was indicted for tax evasion of payment, in violation of 26 U.S.C. § 7201; tax evasion of assessment, in violation of 26 U.S.C. § 7201; and attempting to interfere with the administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). (Indictment (ECF No. 1).)

Orrock moves to suppress all evidence the IRS obtained in violation of its internal rules and that violates Orrock's rights under the Fourth and Fifth Amendments to the Constitution, including evidence the government obtained through summonses. Orrock further moves to suppress audit

---

[1] The motion to suppress (ECF No. 23) is sealed because certain exhibits contain personal-data identifiers that should have been redacted under Rule 49.1(a) of the Federal Rules of Criminal Procedure and Local Rule IC 6-1(a). (Order (ECF No. 38).) Defendant filed a redacted version of the motion (ECF No. 43) for the public record, but the court ordered the Clerk of Court to seal various exhibits to the motion—Exhibit A to ECF No. 43, ECF No. 44, and ECF No. 51—on the grounds that those exhibits contained personal-data identifiers that were not redacted in compliance with the court's previous order. (Order (ECF No. 54).) Defendant was ordered to re-file redacted versions of Exhibit A to ECF No. 43, ECF No. 44, and ECF No. 51 for the public record by July 27, 2017. (*Id.*) Defendant has failed to do so. Defendant must file redacted versions of these documents for the public record by October 16, 2017.

collection information he gave to the IRS, and information Special Agent Kirk obtained in violation of Orrock's constitutional rights. The government opposes the motion, arguing that the evidence in this case was properly obtained. In reply, Orrock restates his arguments.

## I. ANALYSIS

Beginning in August 31, 2010, Revenue Agent Von Ahn of the IRS initiated a civil audit of Orrock's 2004, 2005, and 2006 tax returns. The IRS audit of Orrock's taxes was later expanded in February 2011 to include the years 2007 and 2009. During the initial review, Revenue Agent Von Ahn discovered that Orrock, on his business website, had represented himself to be a former IRS employee, but the IRS computer systems did not show Orrock as a former employee. The question of whether Orrock had improperly represented himself to be a former IRS employee was referred to Special Agent John Kirk at the Treasury Inspector General for Tax Administration ("TIGTA") for investigation.[2] The TIGTA investigation was conducted from September 29, 2010 until March 8, 2011. TIGTA resolved that matter, finding that Orrock had in fact previously been an IRS attorney.

Orrock argues that after the TIGTA investigation commenced, investigators improperly used their authority to collect information for a civil audit to obtain evidence that would be used to support the criminal charges. He further argues that under IRS administrative regulations, when an examiner uncovers a potential fraudulent situation caused by a taxpayer or preparer, the examiner must suspend the investigation once there is a firm indication of criminal fraud. Orrock further argues that the IRS illegally issued administrative summonses under 26 U.S.C. § 7602 in furtherance of his criminal prosecution. He argues that the continued audit investigation after evidence of fraud had been discovered by TIGTA violated his Constitutional rights.

The government denies that the IRS used its civil investigative resources to conduct a criminal investigation. It further argues that the civil audit investigator followed IRS regulations in developing his investigation and eventually referred the matter for criminal process in a manner consistent with the IRS rules.

---

[2] TIGTA provides oversight of IRS activities. *See* www.treasury.gov/tigta (last accessed Oct. 4, 2017).

2

### A. Orrock's Claim of Violation of Section 4564.21 of the IRS Internal Revenue Manual

Orrock argues that IRS agents violated IRS regulations when they conducted a civil audit after a criminal investigation had commenced. He argues that if a revenue agent violates an agency regulation by continuing a civil audit after she has developed firm indicators of fraud, then she is, in fact, making affirmative misrepresentations to the constitutional detriment of the taxpayer because she is gathering criminal evidence against the taxpayer under the guise of a civil proceeding. Specifically, Orrock argues that suppression of all evidence in the government's possession is required because the IRS violated § 4564.21 of the IRS Internal Revenue Manual (IRM) by collecting information after "badges of fraud" had been collected.[3] Orrock argues that Special Agent Kirk's TIGTA investigation into the question of whether Orrock had misrepresented himself as a former IRS employee was a criminal fraud investigation which, under the IRM, should have suspended the civil audit of his taxes because the IRS had discovered "badges of fraud" before it engaged in the civil audit.

The government responds that the applicable provisions of the IRM regarding the handling of fraud investigations were followed. The government further responds that well after the TIGTA investigation, when the civil audit reached a point that fraud had been established, the civil audit was suspended and the matter was referred for criminal prosecution.

The issue is whether the TIGTA investigation should have caused the civil audit to be suspended. The IRM discusses how to recognize the first indicators of fraud and the developmental process used to prove fraud. IRM § 25.1.2.1. When indicators (badges) of fraud are uncovered, the IRS employee must document the potential fraud indicators and initiate a discussion with his group manager. *Id.* at § 25.1.2.2. If the manager concurs then the employee must contact the Fraud Technical Advisor ("FTA"). *Id.* If all three agree that the potential for fraud exists, the employee must prepare a Fraud Development Recommendation. *Id.* The employee, manager, and

---

[3] This court was unable to locate § 4564.21 in the current IRM. The government provided a citation to an analogous provision in the IRM, § 25.1.2.1. Orrock did not clarify this issue on reply.

FTA must create and document a plan to establish affirmative acts of fraud. *Id*. The plan of action "must include following up on all the leads identified as fraud indicators (signs or symptoms); securing copies of all relevant data relating to indicators of fraud; and noting from whom and when obtained." *Id.* at § 25.1.2.4. The employee proceeds with the plan until affirmative acts of fraud are established or a determination is made that the potential for fraud no longer exists. *Id.* at § 25.1.2.2(7). If the affirmative acts of fraud are established, then the employee must suspend collection activity and notify the manager and FTA. *Id.* at § 25.1.2.2(8).

In summary, under the current version of the IRM, the auditing employee proceeds with the collection of information until affirmative acts of fraud are established. Based on the IRM, if no affirmative acts of fraud are established, there is no duty to suspend collection activity. Here, Orrock relies on the TIGTA investigation as being the fraud investigation that mandated the cessation of all civil audit collections efforts. But he does not identify any "badge of fraud" discovered by TIGTA's investigation that would yield this result.[4] Assuming that Special Agent Kirk's TIGTA investigation was a tax fraud investigation,[5] it determined that no fraud had occurred because Orrock was in fact a former IRS employee. In other words, no fraud was "established." Under the IRM, mere suspicion of fraud is not sufficient to suspend a civil audit – an affirmative act needs to be established. Accordingly, Kirk's TIGTA investigation provided no basis under § 25.1.2.2(8) to suspend the collection of information because no affirmative act of fraud was established. Orrock has not offered a plausible theory of how the IRM was violated such that the

---

[4] The IRM lists dozens of indicators of fraud. *See* IRM § 25.1.2.3 (listing examples of fraud in income, expenses, books and records, allocations of income, conduct of taxpayer, and methods of concealment).

[5] The enforcement of tax laws is performed by the Criminal Investigative Division and the Examination Division, not TIGTA. "The IRS splits the responsibility for enforcing the nation's tax laws between its two investigative divisions." *United States v. Peters*, 153 F.3d 445, 447 (7th Cir. 1998). The Criminal Investigative Division ("CID") is "charged with investigating criminal violations of the tax code and related federal statutes", and its investigators are called "special agents." *Id*. "On the other hand, the Examination Division of the IRS is responsible for conducting civil tax audits," and its investigators are known as "revenue agents." *Id.* A civil audit may uncover evidence that causes the revenue agent to refer the case to the CID for criminal investigation. *Id.*

4

civil audit should have been suspended.[6] The court therefore will not suppress any evidence based on § 4564.21.

**B. Orrock's Claim of Violation of 26 U.S.C. § 7602**

Orrock argues that the IRS illegally issued administrative summonses under 26 U.S.C. § 7602 in furtherance of his criminal prosecution because IRS had no authority to issue summonses after the criminal proceedings had been initiated against him. The government responds that the IRS did not issue administrative summonses after a recommendation for criminal prosecution, and that Orrock misstates the law.

Title 26 U.S.C. § 7602(a) gives the IRS the authority to issues summonses in furtherance of its tax enforcement responsibility. The IRS may also make inquiry into any offense connected with the administration or enforcement of tax laws. *Id.* at § 7602(b). Section 7602(d)(1) provides that the IRS may not issue administrative summons once the IRS refers the case to the Attorney General for prosecution. Those statutes do not preclude the IRS from issuing summonses after initiating a criminal investigation without the involvement of the Department of Justice. *Id.* at § 7602(d)(1) ("No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person."). A revenue agent may therefore continue to issue summonses until the IRS refers the case to the Department of Justice for prosecution.

Here, Orrock alleges that the criminal referral of this matter was made on November 6, 2012, but he fails to identify any administrative summons that was issued under § 7602 after the matter had been referred the case to the Attorney General for prosecution. Accordingly, Orrock has failed to sufficiently allege a violation of § 7602, and the court will not suppress any evidence on this basis.

---

[6] "Absent unusual circumstances, the exclusionary rule does not apply when IRS agents violate internal regulations, without also infringing on constitutional or statutory rights." *United States v. Snowadzki*, 723 F.2d 1427, 1430-31 (9th Cir. 1994) (citing *United States v. Caceres*, 440 U.S. 741 (1979)). Because the IRS did not violate its regulations, it is not necessary to determine whether this is one of those "unusual circumstances."

### C. Orrock's Fourth Amendment Claim

Orrock moves to suppress all evidence obtained by the IRS based upon a violation of his Fourth Amendment right against unreasonable searches and seizures. The Fourth Amendment addresses "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347 (1967). Evidence obtained in violation of the Fourth Amendment and evidence derived from it may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

In tax cases, "a consent search is unreasonable under the Fourth Amendment if the consent was induced by the deceit, trickery or misrepresentation of the Internal Revenue agent." *United States v. Robson*, 477 F.2d 13, 17 (9th Cir.1973). There must be "clear and convincing evidence of [ ] actual deception or trickery on the part of the Government" and the defendant must establish "some affirmative misrepresentation" to warrant suppression of evidence obtained during a civil audit. *United States v. Bridges*, 344 F.3d 1010, 1020 (9th Cir. 2003) (citing *U.S. v. Tweel*, 550 F.2d 297, 299 (5th Cir. 1977). Additionally, silence, unless intentionally misleading, will not be equated with fraud. *Robson*, 477 F.2d at 17-18 ("the failure of an IRS agent ... to warn a taxpayer that an audit may have potential criminal ramifications does not render the search unreasonable.")

Here, Orrock does not identify any particular evidence which was seized by the government, let alone the circumstances of the seizure, that he moves to be suppressed. Orrock does not offer any information indicating that any agent made an affirmative misrepresentation to him. To the extent that Orrock consented to provide some information to Revenue Agent Von Ahn during the civil audit procedures, Orrock has failed to offer "some affirmative misrepresentation" to warrant suppression of evidence under the Fourth Amendment. Because Orrock has not offered any evidence of actual deception or trickery on the part of the Government, or some affirmative misrepresentation, suppression of evidence obtained during a civil audit based upon the Fourth Amendment is denied.

///

///

### D. Orrock's Fifth Amendment Claim

Orrock moves to suppress all evidence obtained by the IRS based upon a violation of his Fifth Amendment right against self incrimination. The Fifth Amendment protects against self-incrimination, which usually entails a situation when a suspect is interrogated by law enforcement while in custody without advisement of his constitutional rights, also known as *Miranda* warnings. The obligation to administer *Miranda* warnings attaches once a person is subject to "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). "Custody" turns on whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *U.S. v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (citing *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002)).

Orrock does not identify a specific violation of his Fifth Amendment rights. Orrock does not specify any instance in which he was in custody or interrogated without the benefit of *Miranda* warnings, nor does he identify any particular statements to be suppressed. Because Orrock has not alleged any evidence of a custodial interrogation by the Government, suppression of evidence obtained during a civil audit based upon the Fifth Amendment is denied.

### E. Orrock's Request for an Evidentiary Hearing

Orrock, as a general matter, bears the burden of demonstrating "that a 'significant disputed factual issue' exists such that a hearing is required." *United States v. Howell,* 231 F.3d 615, 621 (9th Cir. 2000) (quoting *United States v. Harris,* 914 F.2d 927, 933 (7th Cir. 1990) (citation omitted)). A court will hold an evidentiary hearing on a motion to suppress only "when the moving papers allege facts with sufficient definiteness, clarity, and specificity to conclude that contested issues of fact exist." *Id.* at 620. Here, Orrock has failed to meet his initial burden that there are disputed matters such that a hearing is required. Orrock's motion for an evidentiary hearing in support of his motion to suppress is denied.

## II. CONCLUSION AND RECOMMENDATION

Accordingly, **IT IS HEREBY RECOMMENDED** that Orrock's Motion to Suppress Evidence (ECF Nos. 23, 43) be **denied**.

///

### III. NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: October 4, 2017

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**