# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

United States of America,

    Plaintiff

v.

Craig P. Orrock,

    Defendant

2:16-cr-00111-JAD-CWH

**Order Overruling Objection, Adopting Report and Recommendation, and Denying Motion to Suppress**

[ECF Nos. 23, 43, 70, 75]

    Defendant Craig P. Orrock was investigated multiple times by the Internal Revenue Service (IRS) and ultimately indicted on two counts of tax evasion and one count of attempting to interfere with the administration of the Internal Revenue Code.[1] Orrock now moves to suppress all evidence that the IRS obtained during its investigations.[2] Magistrate Judge Hoffman recommends that I deny the motion.[3] After considering Orrock's objections to Judge Hoffman's recommendation and reviewing his original motion de novo, I overrule the objections, accept and adopt the recommendation, and deny the motion to suppress.

## Background

    On February 3, 2010, Special Agent John Kirk with the Treasury Inspector General for Tax Administration (TIGTA) began investigating an allegation that Orrock was falsely representing that he was an IRS attorney.[4] After Orrock admitted to filing Forms 2848[5]

---

[1] ECF No. 1.

[2] ECF Nos. 23, 43. ECF No. 23 is the original motion filed under seal because it contains sensitive, personal, identifying information. ECF No. 43 is a redacted version of the same motion.

[3] ECF No. 70.

[4] TIGTA provides oversight of IRS activities. *See* TREASURY INSPECT GENERAL FOR TAX ADMINISTRATION, https://www.treasury.gov/tigta (Nov. 29, 2017) ("The Treasury Inspector General for Tax Administration (TIGTA) was established under the IRS Restructuring and

designating himself as an attorney when he was, in fact, not an attorney in good standing,[6] Kirk referred the case on March 1, 2010, to the United States Attorney's Office for prosecution—the USAO declined it because alternative administrative procedures were available.[7] The case then was referred on April 21, 2010, to the Office of Professional Responsibility, and TIGTA closed its case.[8]

In August 2010, Revenue Agent Von Ahn of the IRS's Examination Division began a civil audit of Orrock's 2004, 2005, and 2006 tax returns.[9] This audit was expanded in February 2011 to encompass 2007 and 2009 as well.[10] During his initial review, Von Ahn discovered that Orrock represented himself on his business website as a former IRS employee,[11] but the IRS computer systems did not report Orrock as a past employee.[12] Von Ahn referred this new, employment-history discrepancy on September 29, 2010, to Kirk at TIGTA,[13] and TIGTA ultimately closed the investigation on March 8, 2011, concluding that Orrock had in fact previously worked for the IRS.[14]

---

Reform Act of 1998 to provide independent oversight of IRS activities."). ECF Nos. 80 at 3; 71-1 at 5–6.

[5] IRS form for Power of Attorney and Declaration of Representative.

[6] Orrock's license was inactive in Oregon for failure to pay bar dues, and he resigned from the Utah bar because he faced felony and professional-misconduct charges.

[7] ECF No. 71-1 at 10.

[8] *Id.*

[9] ECF No. 43-2 at 2.

[10] *Id.* at 4.

[11] *Id.* at 2.

[12] *Id.* at 2–3.

[13] ECF No. 71-1 at 12–13, 17–19.

[14] *Id.*

In January 2011, while Orrock's employment-history discrepancy was still being investigated, Revenue Agent Von Ahn identified indicators (also known as "badges") of fraud while auditing Orrock's tax returns.[15] Von Ahn discussed his findings with his group manager[16] and sent his fraud-development recommendation to the Fraud Technical Advisor.[17] Von Ahn continued his civil audit,[18] and in April 2011, Revenue Officer Desiree Harkama contacted Orrock to collect outstanding balances for the audited years.[19] Between May 2011 and May 2012, Orrock filed for bankruptcy three times[20]—IRS collections are automatically stayed while a bankruptcy petition is pending.[21] The fraud investigation that began with the "badges of fraud" developed and eventually culminated in a joint fraud referral to the IRS's criminal-investigations arm in November 2012.[22] The criminal-investigations department accepted the referral in

---

[15] ECF No. 43-2 at 3.

[16] *Id.*

[17] *Id.* at 3–4 ("Completed Form 11661: Sent to FTA"). Form 11661 is a Fraud Development Status form. https://www.irs.gov/pub/irs-tege/qab_010606.pdf (page 5).

[18] *Id.* at 4–9; *see also* ECF Nos. 45–47.

[19] ECF No. 48 at 11–16.

[20] The Government includes this fact in its response to the objection but fails to support it with any exhibits. The Government relies on "the underlying Examining Officer's Activity Record (Bates #010478–010488, Defendant's Exhibit B) and ICS History (Bates #001912–002057, the first 41 pages make up Defendant's Exhibit G) prepared by the revenue agent and the revenue officer contemporaneously with their activity in this matter." ECF No. 80 at 2 n.1.

I suspect this information is contained in the remaining 104 pages of the ICS History that the Government neglected to file. Nevertheless, I take judicial notice of Orrock's two Chapter 13 bankruptcy petitions and one Chapter 11 bankruptcy petition. FED. R. CIV. P. 201(b)(2), (c)(1); case no. 11-18504-mkn (filed May 31, 2011) (Chapter 13); case no. 11-27888-mkn (filed Nov. 16, 2011) (Chapter 13); case no. 12-16115-mkn (filed May 23, 2012) (Chapter 11).

[21] 11 U.S.C. § 362(a)(6) (2012).

[22] Although no exhibit on the docket supports this fact, the parties essentially agree on it. *Compare* ECF No. 80 at 4 *with* ECF No. 84 at 7.

January 2013,[23] and a grand jury indicted Orrock on April 12, 2016.[24]

Orrock moves to suppress evidence that was obtained during his civil audits.[25] Magistrate Judge Hoffman recommends that I deny the motion.[26] Orrock timely objected.[27]

## Discussion

### A. Specific-objection standard

A district court reviews objections to a magistrate judge's proposed findings and recommendations de novo.[28] "[R]eview de novo means that the court should make an independent determination of the issues and should not give any special weight to the prior determination of the [magistrate judge]."[29] "Normally, the judge . . . will consider the record [that] has been developed before the magistrate and make [her] own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate."[30] "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[31]

### B. Motion-to-suppress arguments

Orrock makes four arguments for suppressing evidence that was obtained during his civil audits. First, the IRS violated its internal policies by continuing a civil audit after badges of

---

[23] *Id.*

[24] ECF No. 1.

[25] ECF Nos. 23, 43

[26] ECF No. 70.

[27] ECF No. 75.

[28] *United States v. Reyna-Tapia*, 28 F.3d 1114, 1121–22 (9th Cir. 2003).

[29] *United States v. Raddatz*, 447 U.S. 667, 690 (1980) (quoting *United States v. First City National Bank*, 386 U.S. 361, 368 (1967) (internal quotations and ellipses omitted)).

[30] *Id.* at 675.

[31] *Reyna-Tapia*, 328 F.3d at 1121–22.

4

fraud had been recognized.[32]  Second, the IRS violated 26 U.S.C. § 7602 when it issued summonses in connection with the civil-audit investigation after the criminal investigation had begun.[33]  Third, the information was illegally seized because IRS agents used deception, trickery, and affirmative misrepresentations to acquire it.[34]  And fourth, Orrock's Fifth Amendment right against self incrimination was violated because the IRS never informed him that his disclosures could be used against him in a criminal prosecution.[35]

### 1. *The IRS did not violate its internal policies.*

Orrock argues that the IRS violated Internal Revenue Manual (IRM) § 4564.21[36] by collecting information after badges of fraud had been identified.  To be clear, Orrock argues that Kirk's investigation of his IRS-employment history was the fraud investigation that should have suspended his civil audits.  The Government responds that the IRS did not violate any of the applicable IRM provisions because proper protocol was followed, and the civil audit was suspended when the matter was referred for criminal prosecution.

The IRM discusses how to recognize the first indicators of fraud and the developmental process used to prove fraud.[37]  When badges of fraud are discovered, the IRS employee must document the potential fraud indicators and initiate a discussion with the group manager.[38]  If the manager agrees with the employee's assessment, the matter is referred to the Fraud Technical

---

[32] ECF No. 43 at 10.

[33] *Id.* at 13.

[34] ECF No. 75 at 10.

[35] *Id.* at 11.

[36] IRM § 4564.21 must be referenced in error because that section is not in the current IRM.  IRM § 25.1.2.1 seems to be the intended citation.

[37] IRM § 25.1.2.1.

[38] IRM § 25.1.2.2.

Advisor (FTA).[39] If all three agree that the potential for fraud exists, the employee must prepare a Fraud Development Recommendation (Form 11661) and submit it to the group manager for approval, and then forward it to the FTA.[40] The FTA develops a plan of action to establish and document affirmative acts of fraud.[41] If the affirmative acts of fraud are established, the employee must suspend the civil audit and notify the group manager and FTA.[42] Basically, the civil audit may continue until affirmative acts of fraud are *established*, not merely suspected. So, the IRS can continue its civil audit and collection activities until affirmative acts of fraud are established.

The conduct here comports with the IRS's protocol. When Von Ahn saw that Orrock advertised himself on his website as an ex-IRS attorney, he submitted the matter to Kirk at TIGTA for investigation. TIGTA ultimately found that Orrock had in fact been an IRS employee and closed its investigation. Because fraud was never established, the IRS was under no duty to suspend its civil audit and collection activities.

While TIGTA investigated the potential employment-history fraud, Von Ahn apparently uncovered additional badges of fraud while auditing Orrock's tax returns. Von Ahn's Activity Record clearly shows that he followed the necessary protocol.[43] After identifying badges of fraud, he discussed the matter with his group manager and later with his FTA. He then submitted the Form 11661 to the FTA and continued with his civil investigation until he established affirmative acts of fraud. The matter was then referred to the criminal-investigations division within the IRS, and the civil investigations were suspended. In neither event was the IRM violated, so I will not suppress any evidence on this basis.

---

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] IRM § 25.1.2.2.(8).

[43] ECF No. 43-2.

### 2. Title 26 U.S.C. § 7602 was not violated.

Orrock next argues that the IRS illegally issued administrative summonses under 26 U.S.C. § 7602 because the IRS had no authority to issue summonses after the criminal proceedings had been initiated against him. The government responds that the IRS did not issue administrative summonses after a recommendation for criminal prosecution, and that Orrock misstates the law.

Title 26 U.S.C. § 7602(d)(1) states that "[n]o summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person."[44] Orrock claims that the matter was referred to the Attorney General for prosecution on November 6, 2012, but he does not cite to a single summons that was issued after that date. Orrock therefore has not shown a violation of § 7602, so I will not suppress any evidence on this basis either.

### 3. Orrock's Fourth Amendment rights were not violated.

Orrock next argues that the IRS violated his Fourth Amendment right against unreasonable searches and seizures. The Fourth Amendment provides "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."[45] The Fourth Amendment protects reasonable and legitimate expectations of privacy,[46] and evidence obtained in violation of the Fourth Amendment and evidence derived from it may be suppressed as the "fruit of the poisonous tree."[47]

"A search conducted without a warrant is unreasonable, and any evidence obtained

---

[44] 26 U.S.C. § 7602(d)(1) (2012).

[45] U.S. CONST. amend. IV.

[46] *Katz v. United States*, 389 U.S. 347 (1967).

[47] *Wong Sun v. United States*, 371 U.S. 471 (1963).

through such a search is subject to exclusion, unless" an exception to rule applies.[48] "One such exception is when the government obtains voluntary consent of the person to be searched prior to conducting the search."[49] In tax cases, "a consent search is unreasonable under the Fourth Amendment if the consent was induced by the deceit, trickery[,] or misrepresentation of the Internal Revenue agent."[50] There must be "clear and convincing evidence of [] actual deception or trickery on the part of the Government[,]" and the defendant must establish "some *affirmative* misrepresentation" to warrant suppression of evidence obtained during a civil audit.[51] Silence, unless intentionally misleading, does not constitute a misrepresentation.[52]

Orrock fails to identify any affirmative misrepresentations by Von Ahn throughout the civil-audit process, instead suggesting that Von Ahn intentionally misled him with his silence. Orrock cites the fact that Von Ahn told the Offer in Compromise department "that it [was] possible that the taxpayer [would] be referred for criminal investigation as well, and that due to the nature of the ongoing investigations, none of this [was] being shared with the [taxpayer] at [that] time."[53]

As *United States v. Stringer*[54] illustrates, the fact that Von Ahn did not tell Orrock about the potential criminal investigation even though he told others within the IRS is not silence that is intentionally misleading to Orrock. In *Stringer*, an administrative SEC investigation was

---

[48] *United States v. Kim*, 2010 WL 3490228, at *3 (N.D. Cal. Sept. 3, 2010) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

[49] *Id.*

[50] *Id.* (citing *United States v. Robson*, 477 F.2d 13, 17 (9th Cir. 1973)).

[51] *United States v. Bridges*, 344 F.3d 1010, 1020 (9th Cir. 2003) (citing *United States v. Tweel*, 550 F.2d 297, 299 (5th Cir. 1977)) (emphasis added).

[52] *Robson*, 477 F.2d at 17–18 ("[T]he failure of an IRS agent . . . to warn a taxpayer that an audit may have potential criminal ramifications does not render the search unreasonable.").

[53] ECF No. 48 at 7.

[54] *United States v. Stringer*, 535 F.3d 929 (9th Cir. 2008).

8

actively coordinated with a criminal investigation by the USAO.[55] At a deposition, the SEC civil attorney asked the court reporters not to reveal to the defense that a criminal investigation was also pending.[56] Stringer's attorney asked the SEC staff attorney whether Stringer was the target of an SEC investigation. The staff attorney replied: "The SEC does not have targets in this investigation."[57] Stringer's attorney then asked whether the USAO or the Department of Justice were working in conjunction with the SEC in investigating Stringer. The staff attorney replied: "As laid out in the 1662 form, in the 'routine use of' section there are routine uses of our investigation, and it is the agency's policy not to respond to questions like that, but instead, to direct you to the other agencies you mentioned."[58] And when Stringer's attorney asked which U.S. Attorney's Office he could inquire of, the staff attorney replied: "That would be a matter up to your discretion."[59]

The Ninth Circuit found that "the SEC made no affirmative misrepresentations."[60] "The SEC engaged in no tricks to deceive defendants into believing that the investigation was exclusively civil in nature. The SEC's Form 1662 explicitly warned defendants that the civil investigation could lead to criminal charges against them . . . ."[61]

The conduct here is similar. Von Ahn made initial contact with Orrock and his attorney on September 13, 2010, when he notified them of the audit and included IRS Notice 609.[62] Notice 609 states: "We may give the information to the Department of Justice to enforce the

---

[55] *Id.* at 933–35.

[56] *Id.* at 934.

[57] *Id.* at 935.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 940.

[61] *Id.* at 940–41.

[62] ECF No. 43-1.

9

federal civil and criminal tax laws, and to other federal agencies as provided by law."[63] Von Ahn did not need to tell Orrock about a potential criminal investigation because Notice 609 did it for him, so the fact that Von Ahn did not repeatedly warn him about that possibility cannot constitute silence that is deceitful or misleading. This argument thus offers no basis to suppress any evidence.

### 4. *Orrock's Fifth Amendment rights were not violated.*

Next, Orrock moves to suppress all evidence obtained by the IRS based upon a violation of his Fifth Amendment right against self incrimination. The Fifth Amendment protects against self incrimination, which usually entails a custodial interrogation without *Miranda* warnings. *Miranda* warnings are only required when a person is subject to a "custodial interrogation."[64] "Custody" requires a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.[65]

Orrock argues that, had he known that he was being investigated for tax-evasion crimes, he would have objected to the IRS's requests for information and would not have disclosed as much as he did.[66] But he does not identify any instance in which he was in custody or the functional equivalent of custody. Plus, he was expressly warned in Notice 609 that any disclosures he made to the IRS could be used to "enforce . . . criminal tax laws." As Orrock was advised of the scope of uses for his disclosures and has not shown that he was in custody, this final suppression argument fails, too.

## C. Evidentiary-hearing request

Finally, Orrock requests an evidentiary hearing because he has been able to obtain only "relatively sparse information" from his Freedom of Information Act requests, and he wants to

---

[63] ECF No. 30-1.

[64] *Miranda v. Arizona*, 384 U.S. 436, 445 (1966).

[65] *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (citing *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002)).

[66] ECF No. 75 at 12.

cross examine the IRS agents. Orrock bears the burden of demonstrating "that a 'significant disputed factual issue' exists such that a hearing is required."[67] A court will hold an evidentiary hearing on a motion to suppress only "when the moving papers allege facts with sufficient definiteness, clarity, and specificity to conclude that contested issues of fact exist."[68]

Orrock argues that there's a clear factual dispute because "[t]he IRS asserts the criminal investigation terminated before the audits but the Exhibits clearly show otherwise."[69] But the exhibits do not "clearly show otherwise." As discussed above, the IRM requires the IRS to suspend a civil investigation once affirmative acts of fraud have been established—it allows the civil investigation to continue after the badges of fraud have been identified. The exhibits show that Von Ahn followed protocol, so Orrock has failed to meet his burden. I thus deny his request for an evidentiary hearing.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Orrock's objection **[ECF No. 75]** to Magistrate Judge Hoffman's recommendation **is OVERRULED**, Magistrate Judge Hoffman's report and recommendation **[ECF No. 70] is ACCEPTED and ADOPTED**, and Orrock's motions to suppress **[ECF Nos. 23 and 43] and request for an evidentiary hearing are DENIED**.

DATED: December 11, 2017.

_____
U.S. District Judge Jennifer A. Dorsey

---

[67] *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (quoting *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990) (citation omitted)).

[68] *Id.* at 620.

[69] ECF No. 9.