# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No.: 2:16-cr-00111-JAD-CWH |
| Plaintiff | **Order on Motions in Limine** |
| v. | [ECF Nos. 175–76, 210] |
| Craig P. Orrock, | |
| Defendant | |

Pro se defendant Craig P. Orrock stands charged with three felonies: two counts of tax evasion and one count of attempting to interfere with the administration of the Internal Revenue laws; he was released on bond. After numerous stipulated or defendant-requested continuances, trial is scheduled for May 7, 2019.[1] The government moves in limine to preclude Orrock from raising several matters that it contends are irrelevant or otherwise inadmissible. Because the government has not yet fleshed out its theory of the case, it is difficult to assess the relevancy of the issues it highlights, so I deny its motion without prejudice to the government renewing its objections at trial. Orrock moves to preclude the government from raising at trial various instances of misconduct throughout his career. Because the government has represented that it will not address these matters in its case in chief, no in limine ruling is necessary. But the government is correct that, if Orrock testifies, it may impeach his credibility by cross examining him on the specific instances raised in its opposition and discussed below.

**I.     Government's omnibus motion to limine [ECF Nos. 175–76]**

The government moves to preclude Orrock from raising various topics that it contends are irrelevant to the charges against him and thus inadmissible under Federal Rule of

---
[1] ECF No. 162.

Evidence 402.  But it is difficult to assess many of these issues because this is a complex tax-evasion case that involves several forms of alleged fraud that span years, involves several companies, and to some extent intersects with other fraudulent schemes.  And although the government has provided a broad overview of its theory of the case, it has not fleshed out its allegation that Orrock evaded paying income tax in its pending motion or other pre-trial filings.[2]  From what I can discern, it appears that one of the government's central allegations is that Orrock funneled various sources of income into one of his corporations and claimed that these funds were recovered from Ponzi schemes and were merely passing through his company before being disbursed to clients—when, in reality, he was surreptitiously using company assets to fund his lifestyle rather than declaring them as income and paying appropriate taxes.  In opposing the government's motion, Orrock argues that many of the issues it raises are relevant to assessing what properly constitutes corporate income and what deductions his company was entitled to declare.  Without a better understanding of the government's theory of the case and how it determined that Orrock underpaid his taxes, it is premature to rule on the relevancy of the issues the government raises.

And although the government addresses several specific documents that Orrock provided in discovery, arguing that they are inadmissible hearsay, it is evident that the government seeks to preclude any "[e]vidence or [a]rgument [r]elating" to these topics.[3]  In other words, the government seeks to exclude from trial the substance of this evidence rather than the form in which Orrock presented it in discovery.  And because the government did not attach many of the documents it addresses, it is difficult to assess their content and the purpose for which they

---

[2] *See* ECF No. 176 at 2.

[3] *E.g.*, *id.* at 6.

2

would potentially be proffered. I therefore deny the government's omnibus motion in limine without prejudice to the government raising its objections at trial.

**II.     Orrock's motion in limine [ECF No. 210]**

Orrock moves to preclude the government from raising at trial various instances of misconduct throughout his career, including the fact that the Utah State Bar filed a complaint against him, which resulted in Orrock voluntarily surrendering his Utah law license. He argues that this information is unduly prejudicial under Rule 403 and constitutes impermissible character evidence under Rule 404. In response, the government represents that it does not intend to raise these matters in its case in chief.[4] But because Orrock has indicated that he will take the stand, the government argues that it may raise several specific instances of misconduct during its cross examination of him to impeach his credibility under Rule 608. It further contends that, if Orrock begins to act as his own character witness—by, for instance, discussing his work allegedly helping elderly victims of fraud—then the government may rebut this evidence under Rule 404 by asking him about this same misconduct.

In his reply,[5] Orrock requests guidance on the limits of these rules and when he will "be deemed to [have] put his credibility at issue by testifying?"[6] It is evident from this question that Orrock has conflated the roles of Rules 404 and 608, which is understandable given that they have some conceptual overlap. Although Rule 404 generally proscribes the admission of "evidence of a person's character . . . to prove that on a particular occasion the person acted in

---

[4] ECF No. 221 at 3.

[5] Orrock is advised that replies to motions in limine are "allowed only with leave of the court." Local Rule 16-3(a). And sur-replies to any type of motions "are not permitted without leave of court . . . ." LR 7-2(b). For the sake of efficiency, I will consider Orrock's additional briefing in this instance but will strike further filings that violate this district's local rules.

[6] ECF No. 222.

3

accordance with th[at] character . . . trait," the rule provides an exception for a criminal defendant, allowing him to offer evidence of a trait "pertinent" to the charges at issue.[7] This evidence is admitted by calling a character witness to the stand, who may testify only about the defendant's reputation or that witness's personal opinion of the defendant's character.[8] The government may then "offer evidence to rebut" the defense's character evidence[9] by asking the character witness during cross examination about "relevant specific instances of the [defendant's] conduct" that would negate that character trait.[10] But as some courts have recognized, a fact witness testifying for the defense—including the defendant himself if he takes the stand—may stray into the realm of character testimony and thus open the door for the government to rebut this evidence on cross examination.[11] Although this line is not always clear, it is well established that "[m]erely taking the stand does not expose the defendant's character to attack . . . ."[12]

---

[7] Fed. R. Evid. 404(a)(2)(A).

[8] Fed. R. Evid. 405(a).

[9] Fed. R. Evid. 404(a)(2)(A).

[10] Fed. R. Evid. 405(a); *see also* 2 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 404.11(2)(a) (2019).

[11] *See, e.g.*, *United States v. Moore*, 604 F. App'x 458, 462 (6th Cir. 2015) (unpublished) (finding that the defendant's grandmother provided character evidence by testifying about his church attendance and daily prayer—thus implying that he had a law-abiding character—and that the district court thus did not abuse its discretion by allowing the government to rebut this evidence by cross examining the grandmother about his prior convictions); *see also United States v. Brown*, 503 F. Supp. 2d 239, 241 (D.D.C. 2007) ("While character witnesses (rather than defendants themselves) are typically used to provide reputation or opinion testimony as to a defendant's character, defendants in certain instances may themselves offer evidence as to their good character and accordingly open the door to cross-examination on those same traits.").

[12] *Weinstein's Federal Evidence* § 404.11(2)(b).

4

By contrast, a witness always places his credibility at issue by testifying.[13] Rule 608 allows a party to impeach a witness, including a testifying defendant, by cross examining that witness about "specific instances" that "are probative of the character for . . . truthfulness or untruthfulness . . . ."[14] Specific instances of misconduct do not need to have resulted in a criminal conviction,[15] but the cross-examining party must have a good-faith basis for believing that the underlying events occurred.[16] Because the government asserts that, if Orrock testifies, the same instances of misconduct are admissible to rebut any testimony about his own character under Rule 408 and for impeaching him under Rule 608, and because a witness's credibility is implicated any time he testifies, I need only address the government's proposed cross examination under Rule 608. I thus turn to the exhibits the government attached to its opposition, which reveal the specific instances of misconduct it intends to raise.

Exhibits one through four all involve the events that resulted in Orrock surrendering his law license. According to the Utah Bar complaint and a news article, Orrock mishandled and embezzled client funds.[17] Rather than continue with the bar proceedings, Orrock voluntarily surrendered his law license, which the bar accepted as a resolution to the matter because the result was "tantamount to disbarment . . . ."[18] Orrock was also criminally charged for this same

---

[13] *Id.*; *see also United States v. Reid*, 634 F.2d 469, 473 (9th Cir. 1980) ("Appellant placed his credibility in issue when he took the witness stand.").

[14] Fed. R. Evid. 608(b).

[15] *Id.* advisory comm. note to subdivision (b); *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009).

[16] 1 Kenneth S. Broun, et al., *McCormick On Evidence* § 41 (7th ed. 2016).

[17] ECF Nos. 221-1, 221-2.

[18] ECF No. 221-3 at 2.

conduct and pled no contest to second-degree felony theft.[19] But rather than enter a judgment of conviction, the state court held Orrock's plea in abeyance on the condition that he pay back his victims,[20] which it appears he did. Orrock attempts to parse these exhibits, arguing for instance that the rule of professional conduct that he was accused of violating is not probative of truthfulness and that the news article is one sided.[21] But Orrock misapprehends the purpose of these exhibits. Because Rule 608 does not allow a cross-examining party to prove prior misconduct through extrinsic evidence, the government has likely provided these documents to establish its good-faith basis for cross examining Orrock about his actions. And regardless of what rule of professional responsibility the Utah Bar cited, the underlying conduct he was accused of—misappropriating and embezzling client funds—is undoubtedly probative of his character for truthfulness. But although the government may question Orrock about this *conduct*, Rule 608's commentary makes clear that the government may not ask him about the *consequences* of his actions,[22] such as the bar and criminal proceedings. The government is thus limited to cross examining Orrock about the conduct that resulted in these proceedings—not the proceedings themselves.[23]

Exhibit five is a private reprimand by the Utah Bar that Orrock consented to. One of the counts of misconduct involved Orrock mishandling client funds that were supposed to be held in

---

[19] ECF No. 221-1 at 6, ¶ 35; ECF No. 221-4.

[20] ECF No. 221-4.

[21] ECF No. 222 at 5–6.

[22] Rule 608 advisory comm. notes to 2003 amendments.

[23] *But see Nat'l Mgmt. Servs., Inc. v. Qwest Dex, Inc.*, 219 F. App'x 658, 660 (9th Cir. 2007) (unpublished) (distinguishing between the "exclusion of the nature of the proceedings, the entities involved, and the penalties imposed," and permissible "questioning as to whether a proceeding had found that [a defendant] had committed certain acts").

trust.[24] He argues that, because these events occurred in the 1980s, he cannot produce witnesses to refute these allegations. But the purpose of Rule 608 is not to create mini-trials about past misconduct; the government is merely allowed to cross examine Orrock about the underlying conduct, and neither party may introduce extrinsic evidence on the issue. Because the underlying conduct involved mishandling client funds, it is probative of truthfulness and may be used for impeachment purposes if Orrock testifies.

Exhibit six is another Utah Bar complaint against Orrock, accusing him, among other things, of failing to refund a portion of unearned fees to a client.[25] Orrock contends that this incident is too old to be probative of his truthfulness. Although, "remoteness remains a relevant factor . . . in assessing the probative value of the evidence," it is not dispositive to the admissibility of a prior bad act, and courts have allowed inquiry into older misconduct when "particularly probative."[26] For instance, in *Jackson v. United States*, the Ninth Circuit found that the prosecution properly impeached a defendant, a disbarred attorney, by questioning him about a 14-year-old incident involving misappropriating client funds.[27] Because the defendant was being prosecuted for mail fraud involving fictitious tax returns, the court found that his "misappropriation was particularly probative of his truthfulness."[28] Although the misconduct here occurred in the early 1990s and is thus even older, it too involved misappropriation of client

---

[24] ECF No. 221-5 at 4–5.

[25] ECF No. 221-6 at 3, ¶ 27. The government asserts—and Orrock does not refute—that the client withdrew the complaint once Orrock returned the funds. ECF No. 221 at 5 n.3.

[26] *United States v. Jackson*, 882 F.2d 1444, 1448 (9th Cir. 1989).

[27] *Id*. at 1447–48.

[28] *Id*. at 1445, 1448.

funds and is particularly probative of the tax-related charges Orrock is facing. The government may therefore question him about this incident.

The government also includes a letter from the Utah Bar regarding a "civil proceeding" against Orrock in Nevada.[29] Bar counsel references the incident that resulted in Orrock surrendering his law license and also states a belief that "Orrock has stolen large sums of money from other victims" and "has been improperly holding himself out as an attorney in Nevada, where . . . he is not licensed to practice law."[30] Orrock does not specifically address this incident, but I find that it also falls within the permissible line of questioning under Rule 608.

The government also asserts that on fourteen occasions Orrock submitted an IRS form in which he attested he was an attorney in good standing when in fact he had at the time already surrendered his Utah law license and was on inactive status with the Oregon Bar.[31] Orrock counters that this issue is not probative of truthfulness because he was on inactive status for failing to pay bar dues rather than as a result of any disciplinary action.[32] But the cause of his suspension is irrelevant; the salient point is that he undisputedly and repeatedly misrepresented his status on IRS forms under penalty of perjury. The government may therefore question Orrock on this issue if he testifies.

Finally, after briefing on Orrock's motion was complete, the government informed him by email that it also intended to impeach him by cross examining him about being found liable in a Nevada state-court bench trial for tortious intentional misrepresentation.[33] In a sur-reply,

---

[29] ECF No. 221-7.
[30] *Id*. at 1–2.
[31] ECF No. 176 at 14.
[32] ECF No. 222 at 7.
[33] ECF No. 223-1 at 2.

8

Orrock argues that the case involved his real-estate brokerage firm—not him personally.[34] The unpublished Nevada Supreme Court disposition affirming the trial court makes no mention of Orrock because he was not a party to the action.[35] So, to raise this issue at trial, the government must have a good-faith basis for believing that Orrock was personally involved in the misconduct. But there is not merit to Orrock's argument that his brokerage's misconduct (if attributable to him) is not probative of truthfulness. The trial court found that the brokerage intentionally made false representations.[36] Accordingly, if the government can demonstrate a good-faith belief that these actions are attributable to Orrock, it may cross examine him about this issue, too.

* * *

Because the government has represented that it will not address Orrock's past misconduct in its case in chief, no in limine ruling is needed in that respect, so I will deny Orrock's motion. But if Orrock takes the stand, the government may seek to impeach him by cross examining him on these matters.

**Conclusion**

IT IS THEREFORE ORDERED that the government's omnibus motion in limine **[ECF Nos. 175–76] is DENIED** without prejudice to the government renewing its objections at trial.

---

[34] ECF No. 223 at 2.
[35] ECF No. 223-2.
[36] *Id*. at 4.

9

**IT IS FURTHER ORDERED** that Orrock's motion in limine **[ECF No. 210] is DENIED**. He is cautioned that, if he takes the stand, the government may impeach him by cross examining him on the issues addressed in this order.

Dated: May 2, 2019

_____
U.S. District Judge Jennifer A. Dorsey